UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**Brandon MCINTYRE,**<br>　　　　　　　　**Defendant.** | Crim. No. 16-13 (KM)<br><br>**OPINION AND ORDER** |

On November 17, 2017, after a hearing, this Court delivered an oral opinion and entered an order (ECF nos. 69, 78) affirming the decision of Magistrate Judge Michael Hammer to continue the detention of the defendant, Brandon McIntyre, pending trial, pursuant to 18 U.S.C. § 3142(e). Now before the Court is the defendant's motion (ECF no. 70) for reconsideration of that ruling. The motion attaches, *inter alia,* some 56 pages of small-font, single-spaced emails, all authored by the defendant, citing legal authorities and facts he wishes brought to the attention of the Court, as well as other exhibits.[1]

This opinion is supplemental to, and must be read in conjunction with, my earlier oral opinion and that of Magistrate Judge Hammer, which will not be summarized or repeated here. For the reasons expressed herein, the motion for reconsideration is denied.

## I. Reconsideration Standards for a Detention Order

The Bail Reform Act contains what amounts to its own reconsideration provision:

---

[1] Those filed under ECF no. 70-2, 70-3, etc., I cite as "Ex. A," "Ex. B," etc., the designations under which they are filed. Because the pages are not numbered sequentially, I cite the page numbers assigned by the ECF system. Despite the defendant's representation by counsel, I have chosen to overlook the formal irregularity of this submission.

1

> The hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f)(2)(B). This provision requires information that was "not known" at the time of the earlier ruling and is "material."

Both sides, however, have alluded to the more flexible, general standards for reconsideration. I consider those standards, which are contained in the Local Civil Rules. *See generally* D.N.J. Loc. Civ. R. 7.1(i). Reconsideration is an "extraordinary remedy," to be granted "sparingly." *NL Indus. Inc. v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996). Generally, reconsideration is granted in three scenarios: (1) when there has been an intervening change in the law; (2) when new evidence has become available; or (3) when necessary to correct a clear error of law or to prevent manifest injustice. *See North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995); *Carmichael v. Everson*, 2004 WL 1587894, at *1 (D.N.J. May 21, 2004). Local Rule 7.1(i) requires such a motion to specifically identify "the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked." *Id.; see also Egloff v. New Jersey Air Nat'l Guard*, 684 F. Supp. 1275, 1279 (D.N.J. 1988).

## II. Prior rulings and procedural history

The reasons for Magistrate Judge Hammer's ruling, and my decision upholding it, were stated orally, on the record. (*See* Transcripts, ECF no. 56-1; ECF no. 78.) Those decisions are incorporated by reference here. I will briefly review the procedural history and prior rulings as to which the defendant seeks reconsideration.

On September 12, 2014, the defendant had an initial appearance before the Hon. Steven C. Mannion, U.S. Magistrate Judge. He waived his right to a detention hearing and consented to pre-trial detention. (ECF no.5) Assistant

2

Federal Public Defender Lisa Mack was assigned to represent him. On January 12, 2016, a federal grand jury returned a two-count indictment charging the defendant with stalking and production of child pornography. (ECF no. 16).

At his arraignment on January 19, 2017, the defendant apparently still had no bail package to propose because he had no place to reside if released. After a bond hearing, he was again ordered detained on consent. (ECF no. 19)

On March 29, 2016, the defendant appeared before the Honorable Michael A. Hammer, U.S. Magistrate Judge, for a bail hearing and to request new counsel. Still having no place to reside if released, he presented no bail package for the court to consider, and Judge Hammer denied his motion to be released on bail. (*See* Tr. March 29, 2016 pp. 3, 7, 8.) In response to defendant's request, the Federal Public Defender was replaced as defendant's counsel with Adalgiza Alexandra Nunez, who was appointed pursuant to the Criminal Justice Act. (ECF nos. 21, 26)

On April 4, 2017, a federal grand jury returned a superseding indictment charging McIntyre him with two counts of production of child pornography; one count of online enticement; two counts of interstate extortionate threat; and one count of stalking. (ECF no. 38)

Mr. McIntyre grew dissatisfied with his second appointed attorney, and sought to replace her. On July 7, 2017, Ms. Nunez was relieved as counsel and James Patton was appointed under the CJA to replace her. (ECF nos. 49, 50) Particularly in light of the two changes of counsel, the Court conducted a *Frye* hearing to verify that the government's plea offers (some six in all), communicated through various counsel, had been rejected. (ECF no. 58) I rejected counsel's request, on behalf of Mr. McIntyre, that I intervene in plea negotiations, alluding to the strictures of Rule 11(c)(1). I likewise rejected defendant's request for an open-ended continuance without trial date, so that he could plead his case with Governor Christie and Attorney General Sessions; rather, I granted the requested 70-day continuance, making it clear that either a trial or a guilty plea would have to occur at its expiration. (ECF no. 63 at 6–11)

3

On October 30, 2017, the defendant, represented by Mr. Patton, again appeared before Judge Hammer for a bail hearing. At this hearing, for the first time, the defendant proposed conditions of release. They were: (a) living with his mother at an apartment she had not yet obtained; (b) home detention, with permission to leave for work and family obligations; (c) mother as third-party custodian; (d) personal recognizance bond signed by his mother and grandparents. (ECF no. 65-1, Transcript of Oct. 30, 2017 ("Hammer Tr.") at pp. 6–10) Judge Hammer, in an oral opinion and order (ECF nos. 65-1, 62), denied release and ordered that detention be continued. Judge Hammer's decision touched on risk of flight, but it is fair to say that it focused on danger to the community.

Mr. McIntyre, again through Mr. Patton, appealed Judge Hammer's most recent detention order to this Court. (ECF no. 65) The submissions included a letter brief (ECF no. 66), as well as voluminous exhibits, including a psychological evaluation (ECF no. 66-4), certificates of completion of various courses of psychological and religious instruction, and lengthy written plan for living a better life and engaging in various worthwhile activities (some of them involving youth) (ECF nos. 66-1, 2, & 3) I convened a hearing on November 17, 2017. Mr. Patton made an effective presentation, carefully keyed to the relevant 3142(g) factors. Nevertheless, after reviewing the parties' submissions, including the new and supplemental material submitted by Mr. McIntyre, I denied the appeal.

My reasons and findings, which in turn incorporated those of Judge Hammer, are set forth in the transcript of the November 13, 2017 hearing. (ECF no. 78 ("Appeal Tr.") at pp. 24–32) An order of detention was filed on November 15, 2017. (ECF no. 69)

## III. Discussion

### A. Intervening Authority, Clear Error of Law

The oral opinions of Judge Hammer and this Court applied uncontroversial principles of law. The defendant, although he cites many cases, does not point to any intervening change in the law, or even really to any error of law. He merely cites cases in which a court, within its discretion, granted release to defendants whose characters or offenses, in Mr. McIntyre's view, made them less deserving of release than himself.

Under the Bail Reform Act of 1984, 18 U.S.C. §§ 3141-3156, a defendant may be detained pending trial if a court "finds that no condition or combination of conditions will reasonably assure the appearance of the person required and the safety of any person and the community." 18 U.S.C. § 3142(e). To permit the court to make such a determination, a hearing must be held pursuant to 18 U.S.C. § 3142(f). As to risk of flight, the government's burden is a preponderance of the evidence; as to danger to the community, the government's burden is proof by clear and convincing evidence. *See United States v. Himler*, 797 F.2d 156, 160-61 (3d Cir. 1986).

Where, as here, there is probable cause to believe that the person committed an offense involving a minor victim under 18 U.S.C. § 2251, a rebuttable presumption arises that there are no conditions which would reasonably assure the appearance of the person required and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(E). Probable cause, triggering the presumption, may be established by an indictment. *See United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986). In making its assessment, the Court will consider the so-called "3142(g) factors": 1) the nature and circumstances of the offense charged, including whether the offense involves a controlled substance or firearm; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

See 18 U.S.C. § 3142(g). See also *United States v. Traitz*, 807 F.2d 322, 324 (3d Cir. 1986); *United States v. Coleman*, 777 F.2d 888, 892 (3d Cir. 1985).

The foregoing principles are well understood and applied routinely by the Magistrate Judges in this district. Judge Hammer's decision, although delivered orally, alluded to and clearly followed them.

The defendant's emails contain three single-spaced pages of descriptions of cases. None represent intervening authority, *i.e.*, cases that were not available in connection with the earlier applications for bail or the appeal to this Court. Among them is only one binding Third Circuit case, *United States v. Traitz, supra*. That 1986 case upheld a district court's reversal of a Magistrate's decision and grant of bail under stringent conditions.[2] It is not on point; there, the charged criminal offenses did not involve child pornography or threats against vulnerable children. The conditions of release in *Traitz* were neither proffered by, nor apparently available to, McIntyre here. (He essentially proposed personal recognizance bonds by relatives and confinement, except for certain purposes, to an apartment that he anticipated would be obtained by his

---

[2] These conditions require that each defendant post monetary bail in the amount of 10% of $400,000 for Traitz and $100,000 for the other two; that each post the title to his home, and in the case of Traitz title as well to other real and personal property, to assure each defendant's appearance and to satisfy the remainder of his bail in the event he breaches any conditions set by the court; that defendants cease and desist all union activity directly or indirectly; that defendants remain at their respective homes subject to house arrest and report by telephone daily to the pretrial services officer; that defendants cease contact with all but family members, attorney and friends having no relation to the allegations in this case; that defendants surrender all firearms; and that defendants comply with any other conditions the court imposes. In addition, the court directed that Traitz agree to a 24 hour phone monitoring of his house phones, to wear a beeper device to disclose his whereabouts if requested by the government, and to surrender his passport.

807 F.2d at 323-24.

mother.) The remaining cases are not binding, are not on point, and were available at the time of the earlier hearings.[3]

At the hearings before Judge Hammer and this Court, Mr. Patton focused on the statutory standards, the 3142(g) factors, and the facts which he believed would move the court in favor of an order of release. That was appropriate. I have considered the newly-cited authorities, but I do not find that they would change the result.

### C. New Evidence, Manifest Injustice

The defendant offers no new evidence that was not previously known to him. The email exhibits (ECF no. 70, Exs. A–J) primarily date from November 2017, before the hearing, and they relate to far earlier events. His counsel, in a reply submission, has summarized the emails (ECF no. 77 at 4–7) and attached a further email in which Mr. McIntyre directly addresses the court (*id.* at 8–12).

Some of the subjects covered in the emails (ECF no. 70) are as follows: Mr. McIntyre's innocence of earlier charges, and the current ones; his complaints about conditions of pretrial confinement; his need to be released so he can prove himself; the lack of actual physical contact between himself and the victims; his dependability and lack of criminal involvement; his good personal character and financial responsibility; his ties to the neighbors, friends, and other members of the community; his volunteer activities, sports, and recreational activities; his church activities and family ties; the financial hardship of incarceration; denials of stalking the person involved in his prior State conviction; and the many persons who would testify to his good character. In his supplemental email (ECF no. 77 at 8–12), some of the topics include the following: Mr. McIntyre disputes the procedural history and denies ever consenting to detention; he argues that Judge Hammer lacked jurisdiction because a prior hearing had been conducted by Judge Dickson; he states that

---

[3] Also disquieting is the defendant's seeming implication that his consent to stringent bail conditions is a stopgap. He cites cases for a "modification hearing for after I am on bail for 90 days to modify my conditions to nothing or a curfew at the maximum." (Ex. A at 3)

7

the full scope of his arguments (the evident reference is to the emails in ECF no. 70) was not before the Court; he has suffered pain and suffering in confinement; he accuses the government of tampering with a witness who now has sent pornographic images to McIntyre's mother; he denies physical stalking; and he states that he was forced into signing a plea agreement in an earlier case.

Much of this material was summarized by Mr. Patton at the hearing (Appeal Tr. 8–10) and was considered by the Court. I do not accept the defendant's argument that because this large volume of material was only summarized, rather than set forth verbatim, it was "unavailable." At any rate, it does not set forth a basis for reconsideration.

The government argues that ties to the community—the defendant's relationships with neighbors, teachers, family friends, and local business owners—may be relevant to risk of flight, but are not relevant to the safety of the community.[4] I agree with Mr. McIntyre that the government's position is overstated. The stated willingness of community members to vouch for the defendant (whether explicitly or implicitly) is not irrelevant to the issue of whether he poses a danger. In my oral opinion, I cited the evidence of good works in the church and community, completion of various programs in prison, and so on. (Appeal Tr. 27) Nevertheless, generalized statements that the defendant has deep community ties do not go very far toward rebutting the presumption that his activities, as charged in the Indictment (and backed up by law enforcement reports, Facebook posts, and other evidence) pose a serious danger.

One of Mr. McIntyre's objections centers around the circumstances surrounding his prior New Jersey state convictions for stalking, in violation of N.J.S.A. 2C:12-10b, and impersonating a law enforcement officer, in violation of N.J.S.A. 2C:28-8b. These, everyone concedes, did not involve a minor, but an adult female victim ("Victim C"). The government proffered that he lurked

---

[4]     See United States v. Schenberger, 498 F.Supp.2d 738, 742 (D.N.J. 2007) (citing United States v. Provenzano, 605 F.2d 85, 95 (3d Cir. 1979)).

8

outside of Victim C's workplace, a McDonald's, and asked coworkers about her. McIntyre denies that he ever appeared in person to harass Victim C. The government supported its presentation, however, with police reports. Such information is properly considered at a detention hearing, where the rules of evidence do not apply. *See* 18 U.S.C. § 3142(f) ("The rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at [a detention hearing]."); *United States v. Delker*, 757 F.2d 1390, 1396–98 (3d Cir. 1985). I cited the lurking, but of far more importance was the pattern demonstrated by Mr. McIntyre's boasting to Victim C of his connection to state troopers, and threats involving taking Victim C's child away and raping her. The currently charged offenses involve similar conduct in relation to vulnerable minors and, I noted, are alleged to have occurred not long after that earlier offense. (Appeal Tr. 27:19–28:9) Whether any prior conduct was face-to-face has some relevance. But the defendant's denials of harassing Victim C in person, even if accepted, would not change my ruling.

Mr. McIntyre urges that the evidence of his threatening messages to the 12-year-old victim was mischaracterized. The government, however, quotes Facebook messages as follows: "No u do what i asked or u dont [sic] love me and alll [sic] that bad stuffs gunna happen to u and ur parents will be in jail.too [sic] and this isnt [sic] a threat its [sic] a promise ud be ass raped by all the girls in prison." As to this victim, the allegations of the Indictment, supported by social media evidence, are that Mr. McIntyre essentially extorted this girl to produce the photographs in question.

As to the 14-year-old victim, the allegations are not dissimilar. According to the Indictment, supported by social media records, Mr. McIntyre repeatedly attempted to induce the girl to meet with him; stated that he had connections to the police;[5] and threatened death to persons close to her if she did not

---

[5] The defendant has submitted letters to the Court, the Assistant U.S. Attorney, and the investigating agent, in which he proposes that he be released in order to act as a sort of freelance criminal investigator. He also addresses the agent as a sort of

9

comply. The girl indicated in some of her messages that she would kill herself, but luckily mustered the presence of mind to contact a school guidance counselor.

Contrary to the implications of the motion, I did not misapprehend the evidence or fail to appreciate that this was "only" a social media case, not one involving in-person contact. I concluded, however, that the harms, even on the assumption that the defendant would always specialize in social media contact, were severe and real, and that—as embodied in the presumption imposed by the Bail Reform Act—the threat was real and ongoing. *See generally United States v. Schenberger*, 498 F. Supp. 2d 738, 742 (D.N.J. 2007) (holding that "[a] defendant's propensity to commit crime generally, even if the resulting harm would be not solely physical, may constitute sufficient risk of danger to come within the contemplation of [the Bail Reform Act]")).

The defendant also asserts that he has been denied his due process rights and should be released because he was denied a timely detention hearing. The procedural history, outlined above, establishes that he received multiple opportunities for such a hearing. Indeed, he has had more than one such hearing. At any rate, noncompliance with the timeliness requirement, standing alone, would not furnish grounds to release a person who is otherwise properly detained. *United States v. Montalvo-Murillo*, 495 U.S. 711, 716-22 (1990).

Finally, the defendant criticizes the conduct of his two prior appointed attorneys. I have recently received a letter from his third appointed attorney, Mr. Patton, stating that Mr. McIntyre wishes to have new counsel appointed. These contentions do not contain anything that specifically bears upon the adequacy of the presentation to Judge Hammer or to me, or that would require reconsideration of the rulings on detention.

---

potential colleague, and closely questions the agent about how to pursue a career in the FBI. (Exs. G, H, I, J) Given the nature of the threats, this, too, raises a red flag.

## ORDER

For the reasons stated in the foregoing opinion,

IT IS this 10th day of January, 2018,

ORDERED that the defendant's motion (ECF no. 70) for reconsideration of this Court's oral opinion and order (ECF nos. 69, 78) denying his appeal of the oral opinion and detention order entered by Magistrate Judge Hammer (ECF nos. 65-1, 62) is DENIED.

KEVIN MCNULTY
United States District Judge